LAMBERT, J.
Tyrone Gilliard (“Former Husband”) appeals the second amended final judgment of dissolution of marriage in which the trial court awarded Judy Gilliard (“Former Wife”) permanent periodic alimony, an unequal distribution of the marital assets, and attorney’s fees. For the reasons discussed below, we vacate the trial court’s second amended final judgment, reverse the first amended final judgment, and remand for further proceedings.
The parties were married for 14 years, 5 months. They have two children, one of which was a minor at the time Former Husband filed his petition for dissolution of marriage, but who has subsequently turned 18 years of age. Former Husband previously served in the United States Air Force and is now employed as a manager by the Federal Aviation Administration (“FAA”). Former Wife has primarily been a homemaker throughout the marriage, but for the last ten years, she has also worked parttime in retail sales and was earning $9.65 per hour at the time of the final hearing. Former Wife has a high school diploma and has completed one and a half years of college. Both parties are in good health, and at the time of the final judgment, Former Husband was 49 years of age and Former Wife was 58 years of age.
The trial court found that Former Husband’s salary fluctuated due to his assignments with the FAA, but that Former Husband’s gross income in 2010 was $125,063; in 2011 it was $154,016; and “as of March 12, 2012, [Former Husband’s] annual salary was $142,927.” The court also found that Former Husband receives retirement compensation from his employer of $118.69 per month, which is directly deposited into a thrift savings plan (“TSP”) and retirement benefits (“FERS”) of $1,412.51 per month, accruing into what the court referred to as a “defined contribution plan.” Former Husband’s employer also provides life insurance in the amount of two times his annual salary. Lastly, Former Husband separately receives approximately $740 per month from the Veteran’s Administration (“VA”).
The trial court awarded Former Wife $4000 per month in permanent periodic alimony and made an unequal distribution of the marital assets and liabilities as described below. Additionally, the court awarded Former Wife attorney’s fees totaling $18,367.50. The court directed Former Husband to pay Former Wife $6,341.09 in attorney’s fees, after crediting Former Husband $6000 for attorney’s fees he previously paid Former Wife and $6,026.41 for monies paid by Former Husband to Former Wife pursuant to a stipulation between the parties.[1]

*1151
Jurisdiction

As an initial matter, the second amended final judgment was entered untimely by the court, as it was entered on its own initiative more than ten days after the rendition of the first amended final judgment of dissolution of marriage. Furthermore, since the change in the second amended final judgment was not a clerical change,[2] the court lacked jurisdiction to enter the second amended final judgment.
Florida Rule of Civil Procedure 1.530(d) (2013)[3] provides:
Not later than 10 days after entry of judgment or within the time of ruling on a timely motion for a rehearing or a new trial made by a party, the court of its own initiative may order a rehearing or a new trial for any reason for which it might have granted a rehearing or a new trial on motion of a party.
Fla. R. Civ. P. 1.530(d).[4] Except as provided by specific rules, a trial court does not have separate authority, on its own initiative, to alter, modify, or vacate an order or judgment. Shelby Mut. Ins. Co. of Shelby, Ohio v. Pearson, 236 So.2d 1, 3 (Fla.1970); Levy v. Levy, 900 So.2d 737, 745-46 (Fla. 2d DCA 2005). Since the trial court lacked jurisdiction to enter the second amended final judgment, that judgment is void. See Benjamin v. Fore, 995 So.2d 543, 544 (Fla. 2d DCA 2008). Nevertheless, we have jurisdiction because Former Husband filed the notice of appeal within 30 days of the rendition of the first amended final judgment of dissolution of marriage, and the errors raised by Former Husband on appeal are equally applicable to the first amended final judgment.

Equitable Distribution

“In distributing marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal ....”§ 61.075(1), Fla. Stat. (2013). Although a trial court may distribute marital assets and liabilities unequally, it is required to justify such an award based on all relevant factors listed in section 61.075(1)(a)-(j), Florida Statutes. Staton v. Staton, 710 So.2d 744, 745 (Fla. 2d DCA 1998). This serves to advise the reviewing court of the trial court’s rationale. Id.
In its equitable distribution award, the court determined that the marital portion of Former Husband’s TSP was 49% of the total value of the plan at the time his petition was filed and distributed to each party $41,721.54, reflecting their respective one-half interest in the marital portion of the TSP. The court distributed to Former Wife the marital home, valued at $140,248, and distributed to her the mortgage on the home, with an indebtedness of $167,778. To offset the negative equity in the home, the court awarded $13,765 to Former Wife, from Former Husband’s interest in the TSP. The court also awarded Former Wife a one-half interest in the marital portion of Former Husband’s FERS re *1152 tirement benefits, but was unable to place a present value on this asset because it was a “defined contribution plan.” The court separately ordered a $6,026.41 distribution to Former Wife from Former Husband’s interest in the TSP because this amount was “previously applied to the [Former Wife’s] legal fees from the Thrift Savings Plan.” Lastly, the court distributed the motor vehicles and other items of personal property to the parties, consistent with the partial mediation settlement agreement they entered into earlier in the litigation.
Former Husband argues that the trial court erred in distributing the marital assets and liabilities for four reasons. First, he argues that the evidence at trial clearly established that during the marriage, the parties entered into a debt consolidation loan in the amount of $56,000 to pay their credit card indebtedness and that the court erred in not considering this debt as a marital liability for distribution. In the first amended final judgment, the trial court recognized that
the parties were working with a debt consolidation firm where the parties [sic] credit card debt which totaled $56,000 was consolidated into a monthly payment of $657.00 by the debt consolidation company and there was no evidence that the marital debt being paid by the consolidation company was less than the total testified to by the husband of $56,000.
However, when determining whether to award a credit to Former Husband for payments he testified he made on this debt, the court specifically concluded that it would not credit Former Husband for these payments because there was a lack of competent evidence regarding this debt or payments.
Second, Former Husband asserts that the court erred when it distributed to Former Wife the sum of $6,026.41 from Former Husband’s interest in his TSP. Based upon the stipulation by the parties, the court previously allowed Former Husband to withdraw money from his TSP, $6,026.41 of which was used to pay Former Wife for her attorney’s fees and costs then due and owing. In its earlier order, the court reserved jurisdiction to consider awarding a credit for all or a portion of this amount as part of its equitable distribution of the parties’ marital assets and liabilities. In the first amended final judgment, the court recognized that Former Husband should be credited the $6,026.41 paid to Former Wife for attorney’s fees and costs. However, when distributing the marital assets and liabilities, the court awarded Former Wife $6,026.41 to be paid from Former Husband’s portion of the TSP account.
Third, Former Husband argues that the trial court erred in not placing a value on the personalty distributed to the parties pursuant to their partial mediation settlement agreement. The parties had previously agreed to a distribution of their furniture, furnishings, and motor vehicles. The court concluded that there was no need to place a value on these items in its equitable distribution award based on the parties’ prior agreement.
Fourth, Former Husband asserts that the trial court erred by inequitably distributing to him a federal tax liability incurred by the parties. Prior to these proceedings, the parties withdrew $155,000 from Former Husband’s TSP. This money was used to satisfy the second mortgage on the marital home, among other things. As the result of this distribution, the parties incurred a $89,000 federal tax liability. In its equitable distribution award, the trial court distributed this IRS liability entirely to Former Husband.
Because we find that the trial court committed several errors in the distribu *1153 tion of the marital assets and liabilities, the entire distribution plan must be reversed and reconsidered on remand. See Banton v. Parker-Banton, 756 So.2d 155, 156 (Fla. 4th DCA 2000). First, the $56,000 consolidation debt was clearly a marital liability. On remand, the distribution of this liability needs to be addressed by the trial court, including any credits to Former Husband.
Second, the trial court erred in awarding $6,026.41 to Former Wife from Former Husband’s share of the TSP. In its equitable distribution award, the court distributed to Former Wife her entire share in the marital portion of the TSP. The net result is that the $6,026.41 previously paid to Former Wife for her attorney’s fees came from Former Husband’s portion of the TSP. The additional $6,026.41 equitable distribution payment ordered by the court to be paid from Former Husband’s interest in the TSP results in Former Husband paying $6,026.41 twice to Former Wife.
Third, the court erred in failing to place a value on the parties’ automobiles, furniture, and furnishings distributed pursuant to the partial mediation agreement. The testimony at trial indicates that there is more than a de minimis value to these assets. While the parties may agree to a specific distribution of some of their assets and liabilities, the court should have placed values on the various items of personal property “because each division and distribution of a marital asset and liability is interrelated to form an overall scheme fair to both parties.” Liberatore v. Liberatore, 5D13-3907 (Fla. 5th DCA Apr. 10, 2015) (citing Kincart v. Kincart, 572 So.2d 580, 531 (Fla. 2d DCA 1990)).
On remand, the trial court is not precluded from making an inequitable distribution of the marital assets and liabilities, including the federal tax liability. If it does, the court should make specific findings as to each factor listed in section 61.075(l)(a)-(j), Florida Statutes. We remind trial judges that in dissolution of marriage cases,
[t]he findings of fact requirement serve two important purposes. First, it requires the judge to determine what the “facts” of the case actually are. Testimony is not a fact until the trial judge says it is a fact. Second, it permits an appellate court to do a comparable fairness analysis on appeal.
See Wright v. Wright, 135 So.3d 1142, 1144 n. 1 (Fla. 5th DCA 2014) (citing Kennedy v. Kennedy, 622 So.2d 1033, 1035 (Fla. 5th DCA 1993)).

Alimony

Former Husband argues that the trial court committed five errors in awarding permanent periodic alimony to Former Wife. He asserts that the trial court erred in: (1) determining his income for purposes of computing alimony; (2) failing to make sufficient findings of fact pursuant to section 61.08(2), Florida Statutes; (3) failing to impute at least full-time minimum wage income to Former Wife in calculating the alimony award; (4) requiring him to maintain life insurance to secure the alimony award; and (5) requiring him to pay the mortgage and other liabilities on the marital home if he fails to timely pay alimony.
In order to award alimony, a court must make “a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance.” § 61.08(2), Fla. Stat. (2013). The burden to show his or her financial need and the spouse’s ability to pay is on the party requesting alimony. Demont v. Demont, 67 So.3d 1096, 1101 (Fla. 1st DCA 2011). For purposes of determining the type of alimony, “a marriage having a duration of greater than 7 years but less than 17 years” is considered a “moderate-term marriage.” *1154 § 61.08(4), Fla. Stat. (2013). As the marriage here is a moderate-term marriage, there is no presumption for or against permanent alimony. Pollock v. Pollock, 722 So.2d 283, 285 (Fla. 5th DCA 1998). Permanent alimony may be awarded following a moderate-term marriage “if such an award is appropriate based upon clear and convincing evidence after consideration of the factors set forth in subsection (2).” § 61.08(8), Fla. Stat. (2013). “The purpose of permanent alimony is to ‘provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties.’ ” Motie v. Motie, 132 So.3d 1210, 1213 (Fla. 5th DCA 2014) (quoting Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980)).
We find that the trial court erred in its award of permanent periodic alimony because the court based the award of alimony on Former Husband’s monthly gross income. A party’s ability to pay alimony should be based on the party’s net income; not gross income. Kingsbury v. Kingsbury, 116 So.3d 473, 474 (Fla. 1st DCA 2013) (citing Vanzant v. Vanzant, 82 So.3d 991, 993 (Fla. 1st DCA 2011)).
We also find the trial court erred in considering Former Husband’s future retirement benefits as both current income and a marital asset, included in its distribution of the parties’ marital assets. Former Husband’s future retirement benefits should not be considered a source of present income; rather, it should be considered in the division of marital assets. See Hahn v. Hahn, 595 So.2d 1098, 1099 (Fla. 4th DCA 1992).
The trial court also erred by not making specific findings in its judgment as to all of the factors set forth in section 61.08(2), Florida Statutes. The court stated that it considered all the factors outlined in section 61.08(2). However, in the context of the alimony award, it failed to make specific written findings regarding the standard of living established during the marriage, the contributions of each party to the marriage, or the tax treatment and consequences of awarding alimony-
As this court recently wrote in Wright:
A final judgment awarding or denying alimony must contain findings of fact relative to the specific, non-exhaustive list of factors enumerated in section 61.08(2). Section 61.08(2), Florida Statutes (2012), mandates that the trial court evaluate any relevant economic factors, including the parties’ earning ability, age, health, education, standard of living during the marriage, value of each party’s estate and contribution to the marriage. In conducting the required evaluation, the trial court must make findings of fact regarding each listed factor. This Court has consistently held that a trial court’s failure to make the findings of fact, as section 61.08 requires, constitutes reversible error. However, omitting these findings is only harmful if their absence impedes appellate review. After a thorough review of the record, we find that is the case here.
Wright, 135 So.3d at 1144 (emphasis added) (footnote omitted) (citations omitted). Based on our review of the record, we find, similar to Wright, that the absence of findings as to each factor impedes our review. Accordingly, we reverse the alimony award and remand. To facilitate possible future review, the trial court should make specific findings as to the parties’ respective net monthly income[5] and each factor enumer *1155 ated in section 61.08(2). Because we are remanding, we also direct that the trial court consider imputing a full-time minimum wage income to Former Wife, if at the time of the hearing, she is not working fulltime. Bracero v. Bracero, 849 So.2d 388, 890 (Fla. 5th DCA 2003) (citing Kreisler v. Kreisler, 752 So.2d 1288 (Fla. 5th DCA 2000)). The parties have no minor children. Former Wife is in good health and, based upon the court’s findings, she is working approximately ten hours per week. There is no indication that she cannot work fulltime.
We also vacate that portion of the first amended final judgment that determined that Former Husband owes alimony ar-rearages and child support arrearages. While we find no error in the calculation of the credits provided towards Former Husband’s alimony and child support obligations that accrued during this litigation, any change by the trial court in determining Former Husband’s monthly net income and the alimony award on remand necessitates a recalculation of the alimony arrear-age and child support arrearages, if any.
Former Husband also asserts that the trial court erred in requiring him to maintain life insurance as security for his alimony obligation. Section 61.08(3), Florida Statutes (2013) provides:
To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose.
§ 61.08(3), Fla. Stat. (2013). A requirement that an alimony award be secured by life insurance or a bond is not mandated. Rather, “it is justified only if there is a demonstrated need to protect the alimony recipient.” Lapham v. Lapham, 778 So.2d 487, 489 (Fla. 5th DCA 2001) (quoting Hedendal v. Hedendal, 695 So.2d 391, 392 (Fla. 4th DCA 1997)).
Here, the court found that Former Husband has group life insurance provided by his employer in an amount equal to two times his annual salary, which costs him approximately $10 per pay period. Just prior to filing the petition, Former Husband changed the beneficiary on the life insurance policy from Former Wife to their daughters. The trial court found that Former Husband has the ability to maintain the life insurance policy and that special circumstances exist that warrant the need to secure the alimony.[6] We find no error in this determination; however, as we are remanding this case to reconsider the alimony award, the court should also consider whether the entire amount of the life insurance policy is necessary to secure the alimony award.
We do find error, though, in the trial court’s separate finding that if Former Husband fails to timely pay alimony, he then becomes responsible to pay the mortgage and other liabilities of the marital home in addition to his unpaid alimony. If Former Husband fails to pay his alimony, the trial court has the authority to impose sanctions to address any willful failure to comply with a court order. See Fla. Fam. L.R.P. 12.615(a). However, pri- or to a court imposing sanctions, an alleged contemnor must be given an opportunity to be heard, at which point the court must “determine whether the alleged con- *1156 temnor had the present ability to pay support and willfully failed to pay such support,” inter alia. Fla. Fam. L.R.P. 12.615(b)-(c). Here, the trial court has summarily and prematurely imposed the sanction of requiring Former Husband to pay additional monies if he defaults on his alimony obligation without providing him with an opportunity to be heard. We therefore strike this provision from the first amended final judgment.

Attorney’s Fees

The trial court found that Former Wife’s attorney’s fees totaled $18,367.50 and made specific factual findings in its first amended final judgment as to a reasonable number of hours spent and the reasonable hourly rate. We find no error in these findings. The court found that Former Wife had the need for an award of attorney fees and directed that Former Husband pay attorney fees in the amount of $6,841.09, which is the remaining balance after crediting Former Husband $6000 for an attorney’s fee payment he previously paid to Former Wife and $6,026.41 for an attorney’s fee payment made by Former Husband to Former Wife through the stipulated, court-approved withdrawal from his TSP. Because we are remanding for a reconsideration by the trial court as to both the award of alimony and the distribution of marital assets and liabilities, we also reverse the present award of attorney fees for further reconsideration after the trial court determines alimony and the distribution of marital assets and liabilities. However, we are not precluding a subsequent award of attorney’s fees to Former Wife, if appropriate.
In summary, we reverse the first amended final judgment and remand with directions that the trial court: (1) determine the fair market value on the items of personal property distributed in the partial mediation agreement; (2) include the $56,000 debt consolidation loan as a marital liability for distribution, including considering providing credit to Former Husband for post-petition payments on this debt; and (3) strike the distribution of $6,026.41 to Former Wife from Former Husband’s portion of the TSP. Additionally, if the court, on remand, makes an inequitable distribution of all marital assets and liabilities, it should make specific factual findings as to each factor in section 61.075, Florida Statutes, to support the inequitable distribution.
We also reverse the permanent periodic alimony award and remand for a reconsideration of alimony based upon the parties’ monthly net income, including considering whether to impute full-time minimum wage income to Former Wife if, at the time of the hearing on remand, she is not otherwise working fulltime. In fashioning the alimony award, the court should also make specific findings of fact as to all factors in section 61.08(2). We strike the awards of retroactive alimony arrearages and retroactive child support arrearages without prejudice to a recalculation of the arrearages, if any. We remand for reconsideration of the amount of life insurance necessary to secure the alimony award but strike the requirement that summarily orders Former Husband pay the mortgage payment and other liabilities associated with the marital home if he fails to pay the alimony award. Lastly, we reverse the attorney’s fee award without prejudice; the court may award Former Wife attorney’s fees, if appropriate, after it has redetermined the alimony award and redistributed the marital assets and liabilities. The trial court may take additional evidence as necessary. As to all other matters, we affirm.
AFFIRMED, in part; REVERSED, in part; and REMANDED for further pro- *1157 eeedings. Second amended final judgment VACATED.
ORFINGER and LAWSON, JJ„ concur.

. The stipulation was approved by the court and permitted Former Husband to withdraw money from his TSP to pay Former Wife’s attorney’s fees and costs owed at that time.

. Florida Rule of Civil Procedure 1.540(a) permits a trial court to correct a clerical error at any time on its own initiative. Florida Family Law Rule of Procedure 12.540 specifically provides that Florida Rule of Civil Procedure 1.540 governs the “general provisions concerning relief from judgment, decrees, or order, except” for two circumstances not applicable here.

. Florida Family Law Rule of Procedure 12.530 specifically provides that "[mjotions for new trial and rehearing and amendments of final judgments shall be governed by Florida Rule of Civil Procedure 1.530.”

.Effective January 1, 2014, rule 1.530(d) was amended to change the deadline for a court to act on its own initiative from 10 to 15 days. In re Amendments to Florida Rules of Civil Procedure, 131 So.3d 643, 651 (Fla.2013). This change is not applicable in the present appeal because the second amended final judgment was rendered in 2013.

. Former Husband’s net income should include his current VA benefits. Former Husband testified that his VA benefits were reduced from $740 to $680 per month upon the *1155 parties’ youngest daughter turning 18 years of age.

. The trial court found that Former Wife would be left in dire straits after the death of Former Husband due to her age, her limited earning capacity, and the lack of assets to assist her in sustaining herself.