COHEN, C.J.
Joseph Knecht ("Former Husband") appeals the final judgment dissolving his three-year marriage to Evangelina Palmer ("Former Wife"), arguing that the trial court erred in its classification of certain assets as marital or nonmarital, its equitable distribution of the marital property, and its denial of his request for attorney's fees. He also challenges certain language in the final judgment retaining jurisdiction to modify the final judgment. We affirm in part, reverse in part, and remand for reconsideration of Former Husband's request for attorney's fees and to strike the *844 language in the final judgment retaining jurisdiction.
Both parties were previously married. Former Wife, a self-employed realtor, entered this marriage with significant assets, while Former Husband, a Certified Public Accountant ("CPA"), entered with significant debt. The primary issue on appeal is the characterization of appreciation in a home purchased during the marriage for $412,000. The down payment for the home came exclusively from Former Wife's premarital assets, the title to the home and accompanying debt were exclusively in Former Wife's name, and during the marriage, all the mortgage payments were made from Former Wife's premarital assets.
The parties remodeled the home, spending more than $500,000 on the project. Despite having over $912,000 invested in the home, the parties agreed that its value at the time of the divorce was $575,000. Former Husband claimed entitlement to one-half of the $163,000 appreciated value of the home, the difference between the agreed value and the purchase price. Even though he acknowledged that virtually all the money used for the renovations came from Former Wife's nonmarital assets, Former Husband argued that those monies had been commingled into a joint account before being used on the renovations. Specifically, the funds used to pay for the renovations were taken from Former Wife's premarital trust and deposited into a business account that she owned individually but on which Former Husband was an authorized signer. The funds were then transferred from the business account into a joint checking account, from which the funds were used to pay for the renovations. Former Wife testified that she transferred the funds in that manner at Former Husband's direction. Furthermore, the evidence is undisputed that Former Husband deposited some monies into the joint checking account, albeit a relatively small amount.[1]
Another issue on appeal is the classification of what was termed the "Church Art Note." Former Wife's first husband, who passed away, had accumulated a substantial art collection. Before the parties in this case married, Former Wife had negotiated with a church to purchase certain artwork. The negotiations resulted in Former Wife holding a note for monthly payments from the church. Former Husband claimed that he assisted in negotiating the terms of the note, and that, in return, Former Wife agreed to pay him twenty percent of the value of the note.[2]
The trial court entered a final judgment dissolving the marriage and rejecting Former Husband's claims for additional alimony, one-half of the appreciated value in the home, a percentage of monies owed to Former Wife on the note, and request for attorney's fees.[3] In doing so, the court found that: Former Wife entered the marriage with substantial nonmarital assets; Former Husband entered the marriage *845 with substantial nonmarital debt; the marriage was short term; Former Wife purchased the home and funded the renovations with her premarital assets; and it would be inequitable to award Former Husband one-half of the appreciation in the home.
Former Husband subsequently moved for rehearing. The trial court entered a written order denying the motion and making the following additional findings: Former Husband spent over $200,000 on his personal living expenses during the marriage while earning only $30,000 to $40,000 per year; Former Wife's liquid assets decreased from $1.1 million to $350,000 during the marriage; the funds deposited into the joint checking account used to pay for the renovations were entirely from Former Wife's separate, nonmarital accounts; and Former Husband clearly took financial advantage of Former Wife.[4] This appeal followed.
We agree with Former Husband that the trial court incorrectly characterized the funds used for the renovations as nonmarital. Former Wife commingled those monies by placing them into a joint checking account she held with Former Husband from which the renovations were then funded. "All personal property titled jointly by the parties as tenants by the entireties [sic], whether acquired prior to or during the marriage, shall be presumed to be a marital asset." § 61.075(6)(a)3., Fla. Stat. (2015). It was also undisputed that Former Husband contributed some monies into the joint checking account. "[W]hen one spouse deposits funds into a joint account where they are commingled with other funds so as to become untraceable, a presumption is created that the spouse made a gift to the other spouse of an undivided one-half interest in the funds." Sorgen v. Sorgen, 162 So.3d 45, 47 (Fla. 4th DCA 2014) (quoting Williams v. Williams, 686 So.2d 805, 808 (Fla. 4th DCA 1997) ). In making its findings, the court failed to apply the proper burdens of proof.[5]
Nonetheless, we affirm on this issue because this was a case which called for the unequal distribution of marital assets effectuated in the final judgment. Section 61.075(1), Florida Statutes (2015), provides in pertinent part:
[I]n distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including:
*846 (a) The contribution to the marriage by each spouse, including contributions to the care and education of the children and services as homemaker.
(b) The economic circumstances of the parties.
(c) The duration of the marriage.
(d) Any interruption of personal careers or educational opportunities of either party.
(e) The contribution of one spouse to the personal career or educational opportunity of the other spouse.
(f) The desirability of retaining any asset, including an interest in a business, corporation, or professional practice, intact and free from any claim or interference by the other party.
(g) The contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring liabilities to, both the marital assets and the nonmarital assets of the parties.
(h) The desirability of retaining the marital home as a residence for any dependent child of the marriage, or any other party, when it would be equitable to do so, it is in the best interest of the child or that party, and it is financially feasible for the parties to maintain the residence until the child is emancipated or until exclusive possession is otherwise terminated by a court of competent jurisdiction. In making this determination, the court shall first determine if it would be in the best interest of the dependent child to remain in the marital home; and, if not, whether other equities would be served by giving any other party exclusive use and possession of the marital home.
(i) The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.
(j) Any other factors necessary to do equity and justice between the parties.
When a trial court orders an unequal distribution of marital assets, "it is required to justify such an award based on all relevant factors listed in section 61.075(1)(a)-(j)," which "serves to advise the reviewing court of the trial court's rationale." Gilliard v. Gilliard, 162 So.3d 1147, 1151 (Fla. 5th DCA 2015) (citing Staton v. Staton, 710 So.2d 744, 745 (Fla. 2d DCA 1998) ).
The better practice is for trial courts to specifically address the statutory criteria and make findings of fact as to each element. The trial court's failure to do so here has made our review that much more difficult. However, it is clear enough that the trial court believed an unequal distribution of the marital assets was required to do equity in this case, and the court's findings are sufficient to justify an unequal equitable distribution of the parties' assets.
Likewise, we find no abuse of discretion in the trial court's characterization of the proceeds due on the "Church Art Note" as Former Wife's nonmarital asset. Former Husband claimed that he and Former Wife had a contract providing that Former Husband was entitled to twenty percent of the payments on the note for his help in structuring the sale of the artwork. While there was testimony that Former Wife gave Former Husband checks consistent with such an agreement, Former Husband failed to produce a copy of the written contract he claimed that the parties signed. Any monies paid to Former Husband occurred well after the sale of the artwork, and the testimony as to the reasons for those payments was disputed.[6]
*847 We affirm the remainder of the equitable distribution issues raised without comment. However, we do find two issues require reversal. Former Husband correctly argues that the trial court abused its discretion in denying his request for attorney's fees. Specifically, Former Husband asserts that the court failed to consider Former Wife's ability to pay attorney's fees or her superior financial position, instead finding that Former Husband had no need for a fee award because he was capable of earning more income than he currently earned as a CPA. We agree that the court abused its discretion in failing to make findings as to Former Wife's total income and each party's respective net worth, which constitutes a failure to consider the parties' relative financial resources. The court's implicit imputation of income to Former Husband does not remedy this error, especially considering that the court failed to set forth any findings in support. See Freilich v. Freilich, 897 So.2d 537, 543 (Fla. 5th DCA 2005) ("Reversal is required ... when there are no specific findings in the final judgment regarding imputation of income and there is no competent, substantial evidence in the record to support the trial court's decision."). Therefore, we reverse the denial of Former Husband's request for attorney's fees and remand for the trial court to make sufficient findings and to consider the parties' relative financial resources in reviewing his request.
Lastly, Former Husband contests the inclusion of the following provision in the final judgment:
Jurisdiction shall be retained for enforcement of any provision of the final judgement herein or for modification of any provision. Upon application by either party for enforcement or modification of any provision of the Final Judgment notice of such application may be served by United States Mail, return receipt requested, and such service shall be adequate and sufficient to subject that served party to the Court's continuing jurisdiction.
The trial court's blanket reservation of jurisdiction for any modification of the final judgment is erroneous as a matter of law and legally unnecessary. See Encarnacion v. Encarnacion, 877 So.2d 960, 963 (Fla. 5th DCA 2004) ("At the time a judgment of dissolution of marriage becomes final, the parties' property rights, if determined by the judgment, are fixed as a matter of law ... [and] a trial court lacks jurisdiction ... to determine property rights, unless the final judgment reserves jurisdiction for a specific purpose regarding identified property." (citations omitted) ). On remand, the trial court is directed to strike the entirety of the above provision from the final judgment.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
LAMBERT and EDWARDS, JJ., concur.

Former Husband also argued that he was entitled to one-half of the appreciation in the home based on his supervision over the remodeling project, which the court characterized as "sweat equity." Former Wife disputed his role, testifying that they both supervised the project. Former Wife also claimed that Former Husband siphoned money from her during the remodel. Former Husband failed to produce documentation for any alleged cash payments made.

There was no dispute that the artwork itself constituted a nonmarital asset.

A general master previously awarded Former Husband $20,000 for moving expenses and $5,000 for temporary attorney's fees, and awarded Former Wife exclusive use of the home.

In the interest of brevity, we do not enumerate all of Former Husband's financial misdeeds. However, the facts underlying the purchase of a $115,000 Mercedes-Benz vehicle are illustrative. After Former Husband's application for a loan was denied at one bank (even using Former Wife's credit information), Former Husband, without Former Wife's knowledge, went to another bank, applied for a loan in Former Wife's name, and obtained the loan by significantly exaggerating her income on the application.

" 'Marital assets and liabilities' include ... [t]he enhancement in value and appreciation of nonmarital assets resulting from either the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both." § 61.075(6)(a)1.b., Fla. Stat. (2015). The spouse asserting a marital claim to the appreciation in value of the other spouse's separate, nonmarital property bears the initial burden of proving "that marital labor or funds were used to improve [the] asset[ ]," but once that burden is met, "the burden [shifts] to the [owner-spouse] to show that some, if any, portion of the enhanced value [is] exempt from equitable distribution." Yitzhari v. Yitzhari, 906 So.2d 1250, 1254 (Fla. 3d DCA 2005). In totality, Former Wife's testimony supports Former Husband's argument as to the commingling of funds.

We recognize that the court's findings regarding the note in the final judgment and the order on rehearing are inconsistent. While the order on rehearing attempted to clarify the court's rationale for distributing the proceeds of the note, it did the opposite. However, the court did not enter an amended final judgment, and our review on appeal concludes that the court correctly classified the note as Former Wife's nonmarital asset.