IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

SHARIN KAYE JOHNSON,

      Appellant/Cross-Appellee,

v.

      Case No. 5D21-621
      LT Case No. 2019-DR-160

ERIC PAUL JOHNSON,

      Appellee/Cross-Appellant.

_____/

Opinion filed November 4, 2022

Appeal from the Circuit Court
for Flagler County,
Christopher A. France, Judge.

Jessie L. Harrell, of The Harrell Firm,
Jacksonville, for Appellant/Cross-
Appellee.

William S. Graessle, of William S.
Graessle, P.A., Jacksonville, for
Appellee/Cross-Appellant.

PER CURIAM.

      Sharin Johnson ("Former Wife") appeals the trial court's final judgment

of dissolution of marriage, dissolving her marriage with Eric Johnson

("Former Husband"). Former Husband cross-appeals from that judgment.

Former Wife raises six issues. She argues the trial court erred by failing to: (1) award retroactive child support; (2) enter an income deduction order requiring Former Husband to make his support payments through the State Disbursement Unit; (3) allow Former Wife to claim the dependency tax exemption every year; (4) remove a $1,686.94 credit from Former Husband's equitable distribution column where Former Husband did not incur that expense; (5) order Former Husband to maintain life insurance to secure his support obligation; and (6) address Former Wife's request for attorney's fees based on Former Husband's bad faith conduct.

On cross-appeal, Former Husband challenges the trial court's equitable distribution scheme, including its rulings on (a) tax liabilities; (b) business account balances; (c) medical bill balances; (d) forensic accounting and social investigation costs; (e) valuation of property Former Husband claims was either "stolen or kept" by Former Wife; and (f) post-separation debt.

The parties had two children during the course of their nearly twenty-one-year marriage, one of whom was still a minor at the time of dissolution. Former Wife did not work for the majority of the marriage, staying home raising the children. Former Husband operated two IT consulting businesses, which were jointly owned by the parties. Former Husband filed his petition

for dissolution in February 2019, and Former Wife filed her counter-petition thereafter.

Following an initial mediation, the parties agreed to entry of a consent temporary order, which provided, inter alia: (a) completion of a social investigation, for which Former Husband would pay the initial $4,000 retainer; the trial court reserved jurisdiction to apportion the remaining cost after a final hearing; (b) Former Husband has the right to inspect the contents of the marital home; no party shall remove items from the home; (c) performance of a forensic accounting to determine Former Husband's income, for which he would pay the initial $2,000 retainer; the trial court reserved jurisdiction to apportion the cost after a final hearing; (d) sale of the marital home, with Former Wife to have exclusive use and occupancy until sold.

In July 2020, an evidentiary hearing was held for temporary relief, at which the social investigator, forensic accountant, and Former Wife testified. The accountant found, contrary to Former Husband's earlier-filed financial affidavits, that Former Husband's monthly gross income for 2019 was $8,284, and approximately $11,000 for 2020.[1] The accountant also found

---

[1] Former Husband had claimed a 2019 gross monthly income of $6,748 and a 2020 gross monthly income of $8,024.

that historically, Former Husband's net monthly income averaged $10,800. Having exhausted the allotted hearing time, the trial court elected to set the case for trial later that same month, rather than issuing a ruling or setting additional time on temporary matters. The trial court proposed utilizing the testimony from the temporary relief hearing as part of the trial. Neither party objected, and trial was set to take place over two days, one in July and the other in August.

Prior to the effective continuation of the trial, the parties entered into a "Joint Stipulation of Final Resolution of Certain Issues" (hereinafter, "the stipulated agreement"). Pertinent to the issues on appeal, the stipulated agreement provided: (a) the parties shall split equally the cost of the child's extra-curricular activities; (b) the child would reside the majority of the time with Former Wife, specifically providing that "[t]his majority designation is SOLELY for purposes of all other state and federal laws which require such a designation"; (c) Former Husband shall pay Former Wife $800 per month in child support, commencing August 1, 2020, and terminating September 30, 2022; (d) Former Wife would maintain health insurance for the child; (e) Former Husband would provide Former Wife with moving expenses upon the sale of the marital home, and Former Wife would refile the parties' 2018 and 2019 tax returns as "married filing jointly"; (f) Former Husband shall return to

4

the marital home upon Former Wife's vacating it to retrieve items included on an attached exhibit list, excluding the items Former Wife sold for temporary financial relief;[2] and (g) Former Husband shall pay Former Wife $3,000 per month in permanent periodic alimony, commencing August 1, 2020. No agreement was reached on the issues of attorney's fees and equitable distribution. Attached to the stipulated agreement was a child support guidelines worksheet and a list of items contained in the marital home for Former Husband to retrieve. The child support guidelines included the parties' stipulated net monthly incomes: $4,744 for Former Husband and $3,990 for Former Wife, which included the alimony payment.

The trial court entered an order approving the parties' stipulated agreement. Following trial, the trial court entered an "Order on Trial," explaining the state of the evidence and the proceedings and noting that it was prepared to make final rulings on some issues but reserve on others.[3] Specifically, the court noted that it had received substantial evidence on time-sharing, the valuation of Former Husband's businesses, and the value of the

---

[2] At the hearing on temporary relief, Former Wife testified that she was forced to sell some items in the marital home in order to support herself and the child, as Former Husband's temporary support—an apparent agreement to pay her $335 per week for both her and the child—was inadequate.

[3] Of the two trial hearings set, only one took place.

parties' stock, and as such, was prepared to make a final ruling on those issues. The remaining issues included equitable distribution, post-filing debts of the Former Wife, retroactive alimony and child support, marital debt, and marital assets. The trial court suggested that written arguments, including summaries of the parties' exhibits, could be filed to resolve the outstanding issues if the parties desired to complete the litigation in an efficient and timely manner.

Soon thereafter, Former Wife filed two motions for contempt, alleging that Former Husband had been late paying his child support and alimony payments based upon the stipulated agreement. She also alleged that he was not paying his half of the child's extra-curricular expenses. Former Wife specifically requested the trial court require Former Husband's future support payments be made through the State Disbursement Unit via an income deduction order.

In response to the trial court's "Order on Trial," the parties agreed to file trial memorandums in lieu of a second hearing. After the parties' submitted their written memoranda, the trial court entered an order titled "Final Rulings on Reserved Issues and Order for Final Judgment." The trial court addressed the parties' finances during the course of the marriage and separation, noting that Former Wife's role was to raise their children and

Former Husband's to provide financially for the family. It found that while Former Wife had claimed a lack of sufficient support post-separation for both herself and the child, the evidence also showed that Former Wife had spent her money on "things that [were] not necessities." Still, the court found that Former Husband had left Former Wife with "no support" for certain periods of time.

As to Former Husband's income, the court adopted the findings in the forensic accounting report, namely, that he had "shut down" the two jointly owned businesses on the "eve of the divorce filing" only to reopen two new (but identical in nature) businesses thereafter. The trial court also provided a chart of Former Husband's monthly business income based on the forensic accounting.

The trial court adopted and ratified both the consent temporary order and the stipulated agreement. It found that after monthly child support and alimony, Former Husband's net monthly income was $3,944 and Former Wife's was $4,790; it also noted that Former Wife had begun generating her own income by way of her recent property management position.

With respect to retroactive alimony and child support, the trial court ruled, "The Court finds for the Husband as stated in the Husband's trial memorandum and will not order retroactive alimony and support in light of

7

the other rulings within this order." As to attorney's fees, the court ruled, "The Court finds for the Husband and adopts the argument and rational[e] found in . . . Husband's trial memorandum." And on the parties' tax liabilities, it likewise found for Former Husband "as stated in [his] pre-trial memorandum for each year." The court ordered that the costs of the social investigation and forensic accounting be equally divided between the parties. The trial court requested Former Husband to file a proposed final judgment incorporating the rulings made therein, and if the parties could not agree on equitable distribution, each party could file their own proposed worksheet.

Prior to entry of a final judgment, Former Wife filed a motion for rehearing and an objection to Former Husband's proposed final judgment.[4] The motion for rehearing was denied and a final judgment entered, which incorporated the trial court's earlier rulings, ordered the parties to alternate the dependency tax exemption, and included an equitable distribution worksheet.

After entry of the final judgment, Former Husband moved for rehearing, wherein he addressed the following aspects of the trial court's rulings: (1) apportionment of the parties' tax liabilities and payments; (2) credits for

_____

[4] Former Wife requested the court to reopen the evidence and hold a hearing to resolve the parties' conflicting equitable distribution worksheets.

8

payments toward Former Wife's medical bills and the child's medical bill; (3) credit for an unauthorized charge of his credit card; (4) credit for payment toward the forensic accounting cost; and (5) the determination that his businesses were marital property. In response, Former Wife filed an amended motion for rehearing, which requested the following: (1) remove the 2019 tax liability from equitable distribution, as such liability was non-marital; (2) require Former Husband to secure life insurance for his support obligations; (3) deny Former Husband's request relating to an unauthorized charge of his credit card; (4) revisit the ruling on the dependency tax exemption; and (5) require Former Husband's support payments be made through the State Disbursement Unit via income deduction order. The trial court ordered Former Wife to file a response addressing Former Husband's motion for rehearing.

In her response, Former Wife addressed the tax liabilities, explaining that the final judgment adopting Former Husband's calculations were incorrect because he used the parties' "married filing separately" tax returns, despite the agreement to refile as "married filing jointly." She again sought removal of the 2019 tax liability, arguing that it was non-marital. Former Wife included what she asserted were the proper calculations when considering the parties' "married filing jointly" returns; attached to her response was a

9

spreadsheet completed by the parties' accountant, who had always completed their taxes. She also attached an updated equitable distribution worksheet reflecting the proper tax liabilities and removal of the 2019 taxes.

The trial court entered an order adopting Former Wife's arguments relating to the tax liabilities but denied all other relief. No amended final judgment or equitable distribution worksheet was entered. Former Wife timely appealed, and Former Husband cross-appealed.

For purposes of simplicity, we begin with Former Wife's argument regarding removal of the $1,686.94 credit awarded to Former Husband in the equitable distribution worksheet, which represented auto insurance payments on behalf of Former Wife. On appeal, as she did below, Former Wife asserts that her auto insurance was paid for by Former Husband's business credit card for the majority of the proceedings, but he stopped paying and disputed the charges on that card. As a result she was forced to pay for her auto insurance and the charges to his credit card were reversed. Thus, Former Wife contends that assigning an insurance payment of $1,686.94 to her in equitable distribution resulted in her having to pay that expense twice. Former Husband concedes that the trial court erred in awarding him credit for that amount. As such, we remand to the trial court

10

with instructions to remove that credit from equitable distribution and recalculate accordingly.

Next, we turn to Former Wife's argument that the trial court erred by failing to address her request for Former Husband to maintain life insurance to secure his support obligations. A trial court's decision on whether to require a party to maintain life insurance to secure support obligations is reviewed for an abuse of discretion. See Jimenez v. Jimenez, 211 So. 3d 76, 79 (Fla. 4th DCA 2017) (citation omitted). Section 61.08 provides:

> To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose.

§ 61.08(3), Fla. Stat. (2020).

Former Wife had requested such relief in her counter-petition, trial memorandum, and motion for rehearing. She highlighted Former Husband's testimony that he already had a $1,000,000 life insurance policy, and she requested only a $500,000 policy. While Former Husband maintained that he had already been struggling to afford his current policy, the trial court failed to rule on Former Wife's request. Therefore, we remand this issue for resolution. See Barrett v. Barrett, 313 So. 3d 224, 229–30 (Fla. 5th DCA 2021); Duffey v. Duffey, 972 So. 2d 290, 291–92 (Fla. 5th DCA 2008).

11

We next address Former Wife's contention that the trial court erred by failing to require Former Husband to make his support payments through the State Disbursement Unit via an income deduction order. Initially, it should be noted that the parties' stipulated agreement specifically provided that both alimony and child support would be paid directly to Former Wife rather than through the State Disbursement Unit. However, the record reveals that Former Wife filed two motions for contempt alleging that Former Husband's support payments were late and deficient; in those motions, she requested that Former Husband's future support payments "be paid through the State Disbursement Unit by way of [an] Income Deduction Order."[5] Although she never obtained a ruling on those motions, she again requested such relief in her trial memorandum and raised the issue once more in her motion for rehearing. The final judgment is silent on the issue.

Section 61.1301 governs income deduction orders and provides, in relevant part:

(1) Issuance in conjunction with an order establishing, enforcing, or modifying an obligation for alimony or child support.--

(a) Upon the entry of an order establishing, enforcing, or modifying an obligation for alimony, for

---

[5] Former Wife also alleged that Former Husband had failed to reimburse her for his half of the child's extra-curricular activities, which was also agreed upon in the stipulated agreement.

12

child support, or for alimony and child support, other than a temporary order, the court shall enter a separate order for income deduction if one has not been entered.

§ 61.1301(1)(a), Fla. Stat. (2020).

While the "statute is mandatory," Seith v. Seith, 337 So. 3d 21, 26 (Fla. 4th DCA 2022), the parties were free to contract otherwise. See Lester v. Lester, 736 So. 2d 1257, 1259 (Fla. 4th DCA 1999) (observing that, while parents may not "contract away" their child's right to support, they are not precluded from "making contracts or agreements concerning their child's support so long as the best interests of the child are served" (citations omitted)). However, with allegations of Former Husband's failure to strictly comply with the terms of the stipulated agreement, the trial court should have addressed the issue in the final judgment. Accordingly, we remand for further consideration of Former Wife's request for an income deduction order.

We now turn to Former Wife's argument that the trial court erred in failing to consider her specific request for an award of attorney's fees incurred as a result of Former Husband's bad faith conduct. She argues that the trial court's ruling focused only on the parties' needs and ability to pay. Former Wife contends that the following circumstances amount to bad faith conduct, causing her to incur additional attorney's fees: Former Husband misrepresented his income, filed incorrect financial affidavits, falsely claimed

13

he had been paying taxes, requiring the retention of a forensic accountant to determine his actual income; he closed jointly owned bank accounts on the "eve of litigation"; he failed to fully support her and the child based on his misrepresented income; he sought 50/50 timesharing despite the social investigation's findings that he did not have a close relationship with the child; and he showed a "lack of candor" in describing the disposition of the parties' silver and gold in his trial memorandum.

Although the trial court technically ruled on Former Wife's request for attorney's fees, it did so by simply "adopt[ing] the argument and rational[e]" advanced in Former Husband's trial memorandum. However, Former Husband's trial memorandum focused exclusively on the parties' financial resources, need and ability to pay, and the notion that both parties will be on equal footing after equitable distribution and support awards. While it is true that an award of attorney's fees is generally inappropriate when the requesting spouse has the ability to pay in light of equitable distribution and alimony, that does not necessarily preclude the trial court from exercising its discretion to order a spouse to pay a portion of fees based on bad faith conduct. See Rosen v. Rosen, 696 So. 2d 697, 700 (Fla. 1997) (noting that, while parties' financial resources are primary factor to consider in determining fee award, other relevant circumstances may be considered,

14

including bad faith conduct); see also Kelly v. Kelly, 925 So. 2d 364, 368 (Fla. 5th DCA 2006) (remanding dissolution judgment for trial court to award former wife larger fee award based on former husband's numerous bad faith litigation tactics even where former wife had ability to pay her own fees after dissolution).

Because the trial court failed to address Former Wife's basis for an award of attorney's fees, we remand for further consideration. See Sumlar v. Sumlar, 827 So. 2d 1079, 1085 (Fla. 1st DCA 2002) ("Appellant argued that Appellee's own conduct in allegedly hiding or squandering assets and refusing to disclose certain requested information during discovery prolonged the litigation and caused her to incur additional attorney's fees. The trial court made no findings regarding Appellee's acts or omissions in this regard.").

Former Wife also argues that the trial court erred in failing to award retroactive child support. "A trial court's denial of retroactive child support is reviewed for an abuse of discretion." Johnson v. Johnson, 297 So. 3d 700, 704 (Fla. 1st DCA 2020) (citing § 61.30(17), Fla. Stat.). "Although we review a trial court's award of child support for an abuse of discretion, a trial court's decisions concerning support must be supported by competent substantial evidence and factual findings sufficient to enable this Court to determine how

the trial court made the decisions it did." <u>Lennon v. Lennon</u>, 264 So. 3d 1084, 1085 (Fla. 2d DCA 2019) (citations omitted).

Section 61.30 provides in relevant part:

> (17) In an initial determination of child support, whether in a paternity action, dissolution of marriage action, or petition for support during the marriage, the court has discretion to award child support retroactive to the date when the parents did not reside together in the same household with the child, not to exceed a period of 24 months preceding the filing of the petition, regardless of whether that date precedes the filing of the petition. In determining the retroactive award in such cases, the court shall consider the following:
>
> (a) The court shall apply the guidelines schedule in effect at the time of the hearing subject to the obligor's demonstration of his or her actual income, as defined by subsection (2), during the retroactive period. Failure of the obligor to so demonstrate shall result in the court using the obligor's income at the time of the hearing in computing child support for the retroactive period.
>
> (b) All actual payments made by a parent to the other parent or the child or third parties for the benefit of the child throughout the proposed retroactive period.
>
> (c) The court should consider an installment payment plan for the payment of retroactive child support.

§ 61.30(17)(a)-(c), Fla. Stat. (2020).

Former Wife argues that the trial court should have awarded $9,658.68 in retroactive child support based on her calculations of what Former

Husband had paid throughout the proceedings. Specifically, she contends that Former Husband "swore under oath" that he was making $335 weekly payments for both her and the child, and she relied on those numbers to calculate the retroactive support figure. In his argument against an award of retroactive child support, Former Husband claimed that he had already overpaid his support obligations during the retroactive period because he had been paying the full $335 per week solely for the child, amounting to $25,125. Former Wife asserts that Former Husband should be precluded from recharacterizing the $335 payment as only for the child to avoid paying retroactive support.

In ruling on retroactive child support, the trial court once again merely adopted the argument articulated in Former Husband's trial memorandum. However, the trial memorandum inadequately described the state of the retroactive payments made and provided no insight, calculations, or analysis as to how he arrived at the figures articulated. As a result, we find the trial court's adoption of Former Husband's argument resulted in a lack of specific factual findings in the final judgment on this issue. See Lennon, 264 So. 3d at 1085. Moreover, Former Husband acknowledged throughout the proceedings that the $335 weekly support payments were to be split between Former Wife and the minor child. It was disingenuous for Former Husband

17

to characterize his $25,125 in support payments as being solely for child support. Thus, on remand, the trial court should revisit its ruling on retroactive child support and render appropriate findings of fact. See Davies v. Turner, 802 So. 2d 1195, 1195 (Fla. 1st DCA 2002) (reversing dissolution judgment and remanding for trial court to "explain how it reached its [retroactive child support award] or to conduct further proceedings on this matter"); see also Miller v. Miller, 826 So. 2d 480, 482 (Fla. 1st DCA 2002) (finding that trial court's rationale for declining to order retroactive child support lacked sufficient findings and failed to explain its decision).

Finally, we address Former Wife's challenge to the trial court's ruling that the parties alternate the dependency tax exemption for their minor child. We review the trial court's decision for an abuse of discretion. See Vick v. Vick, 675 So. 2d 714, 719 (Fla. 5th DCA 1996); see also Salazar v. Salazar, 976 So. 2d 1155, 1158 (Fla. 4th DCA 2008). While the custodial parent is presumptively entitled to the dependency tax exemption, the trial court has discretion to transfer the exemption to the noncustodial parent. Vick, 675 So. 2d at 719; Abramovic v. Abramovic, 188 So. 3d 61, 64 (Fla. 4th DCA 2016).

Former Wife contends that the parties' stipulated agreement, which provided that their minor child would reside with her the majority of the time, rendering her the primary custodian, had the effect of assigning her the

dependency tax exemption. She further argues that child support was calculated based on her having the exemption, and the trial court's decision to require the parties to alternate was not only contrary to the parties' agreement, but also had the effect of modifying the amount of support available to her. While Former Wife's argument is well taken, our review of the record indicates that her pre-trial statement, filed after entry of the stipulated agreement, explicitly noted that the dependency tax exemption was an issue of fact for the trial court's determination. As such, any error in the trial court's ruling on this issue was self-inflicted.

In summary, as to the Former Wife's appeal, we reverse and remand the final judgment of dissolution with instructions for the trial court to (1) remove the $1,686.94 car insurance credit from Former Husband's column in the equitable distribution worksheet and recalculate equitable distribution; (2) rule on Former Wife's request for Former Husband to maintain a life insurance policy to secure his alimony payments; (3) address the potential need for entry of an income deduction order requiring Former Husband's future support payments be made through the State Disbursement Unit; (4) rule on Former Wife's request for attorney's fees based upon Former Husband's alleged bad faith conduct; and (5) revisit its ruling on retroactive

19

child support.[6] We affirm the trial court's ruling on the dependency tax exemption.

Turning to Former Husband's cross-appeal, he argues that the trial court committed several errors in its equitable distribution scheme. A trial court's equitable distribution scheme is reviewed for an abuse of discretion, and the "distribution of marital assets, whether equal or unequal, must be supported by factual findings based on substantial competent evidence." Moses v. Moses, 46 Fla. L. Weekly D2065, D2066 (Fla. 5th DCA Sept. 17, 2021).

First, Former Husband contends that the trial court erred by unequally apportioning the parties' tax liabilities in its initial equitable distribution worksheet and further erred when it amended its ruling by adopting Former Wife's proposed tax distribution articulated in her response to his motion for rehearing. Specifically, Former Husband argues that Former Wife's spreadsheet attached to her response is hearsay and insufficient evidence to support the trial court's ruling with respect to the 2017 and 2018 tax

---

[6] We express no opinion on the merits of Former Wife's requests for life insurance, an income deduction order, an attorney's fees award based on bad faith conduct, and retroactive child support. Our reversal is based solely upon the failure to either address or make sufficient factual findings on these issues.

20

liabilities. Additionally, he contends it was error to remove the 2019 tax liability as non-marital.

Former Wife's response to Former Husband's motion for rehearing provided the trial court with a spreadsheet prepared by the parties' accountant, which outlined the parties' payments and liabilities for 2017 and 2018 when filed as "married filed jointly." We find that the parties' acquiescence to the procedures utilized in this case precludes reversal. During the second phase of this trial, the rules of evidence were, for all intents and purposes, an afterthought. That is not necessarily good or bad. It can be a cost-effective manner for both sides, but when the parties choose to take that path, they cannot later complain where it leads. In this case, the parties stipulated to filing their respective memoranda in lieu of holding a second final hearing, and the trial court was permitted to consider their filings as additional evidence on the various outstanding issues. Both sides, without objection, presented evidence and related arguments in their memoranda and again in their motions filed after the trial court's initial order on "reversed issues." Former Wife's tax spreadsheet was consistent with how the

presentation of evidence occurred in this case. As a result, we decline to reverse the trial court's treatment of the parties' 2017 and 2018 tax liabilities.[7]

As to the 2019 tax liability, the trial court agreed with Former Wife that such liability was non-marital, as it was incurred after the date of filing—February 2019. We find that the trial court did not abuse its discretion by removing the 2019 tax debt from the equitable distribution worksheet. See § 61.075(7), Fla. Stat. (2020) (providing that "cut-off" date for determining whether liabilities are marital is "the date of the filing of a petition for dissolution of marriage"). Thus, we also affirm that aspect of the trial court's equitable distribution.[8]

Next, Former Husband argues that the trial court erred in equitably distributing the balances in the Wells Fargo and Vystar business accounts, as the funds in those accounts were used to pay down credit card debt, which was accumulated by paying the mortgage, insurance, utilities, and other

---

[7] Notably, under Former Wife's updated equitable distribution worksheet adopting the tax spreadsheet figures, Former Husband's equalizing payment was reduced by approximately $8,000.

[8] In light of our disposition, we need not address Former Husband's argument relating to the trial court's initial ruling on the parties' tax liabilities, which was based upon "married filing separately" returns. The trial court's decision to use "married filing jointly" returns was consistent with the parties' stipulated agreement.

22

expenses for the benefit of Former Wife. On this issue, we agree with Former Wife that Former Husband's appellate argument—that the business account balances should not have been equitably distributed because it would result in him paying Former Wife twice—was not the argument made below. See Sciame v. Sciame, 215 So. 3d 190, 191–92 (Fla. 2d DCA 2017) (rejecting former husband's appellate argument regarding supposed error in equitable distribution where former husband "changed his position and argue[d] for the first time" an argument not presented below). In any event, Former Husband's argument on appeal is insufficient to demonstrate that the trial court abused its discretion in equitably distributing the business accounts.

Former Husband next argues that the medical bills included in equitable distribution—$4,608.81 (Former Wife's bill) and $2,225.20 (the child's bill)—were paid in full by him, such that "the balances were both at zero prior to the entry of the [final judgment]." On appeal, Former Wife concedes that Former Husband had made payments toward the child's medical bill, requiring adjustment of the equitable distribution worksheet. As she did below, Former Wife acknowledges that her column should reflect a debt of only $2,064, and Former Husband's column should reflect a debt of $1,508. On remand, the trial court should recalculate the equitable distribution accordingly.

23

However, as to Former Wife's medical bill—$4,608.81—not only does Former Husband provide no record support for his assertion that he had paid this debt down to zero, but his trial memorandum never alleged that such debt had been fully paid off. Instead, his trial memorandum simply requested the trial court to equitably divide Former Wife's medical bill. Accordingly, we leave undisturbed the trial court's ruling on Former Wife's medical bill.

We agree with Former Husband's next argument—that the trial court erred by failing to credit him with a $2,000 payment he made toward the forensic accounting cost. Relevant to this issue is the trial court's consent temporary order, which provided that Former Husband would pay the initial $2,000 retainer fee, and the trial court would later equally apportion the cost of the forensic accountant's evaluation. A review of the equitable distribution worksheet appears to show that Former Husband did not receive a credit for his initial $2,000 payment toward the later-determined total cost of $11,155.50. As such, on remand, the equitable distribution worksheet should be recalculated to reflect that credit.[9]

Former Husband argues that the trial court erred in its distribution of the value of several items of personal property that were located in the

_____

[9] We reject Former Husband's challenge to the treatment of the social investigation cost as unpreserved.

24

martial home, which, according to him, were "looted" by Former Wife. Former Husband asserts that the final judgment and equitable distribution worksheet "provided nothing in terms of the value of the items [Former Wife] took, secreted, and kept or sold." We reject Former Husband's claim for many reasons. First, the issue was not raised in his motion for rehearing. See Moody v. Newton, 264 So. 3d 292, 294 (Fla. 5th DCA 2019) (finding former wife's challenge to trial court's valuation of marital property unpreserved for appeal where former wife's motion for rehearing "failed to raise any issue with these particular assets" (citing Hentze v. Denys, 88 So. 3d 307, 311 (Fla. 1st DCA 2012))). Additionally, the record demonstrates that the parties had stipulated to the distribution of their marital assets within the home, and Former Husband's trial testimony failed to demonstrate which items he was otherwise entitled to but did not receive. Moreover, he never provided the trial court with any valuation of the personal property for the trial court to rely upon. See Simmons v. Simmons, 979 So. 2d 1063, 1064 (Fla. 1st DCA 2008) ("The judge could not have made findings of value based on anything other than the evidence presented by the parties, and the parties did not present evidence of value for many of the major assets included in the equitable distribution.").

Finally, Former Husband argues that the trial court erred by failing to provide him a credit in equitable distribution for his post-separation debt of $33,922.10, incurred to keep current with his support obligations, even though Former Wife's post-separation debt of $16,660 was included. However, after the trial court entered its equitable distribution worksheet, Former Husband's motion for rehearing wholly failed to address any error with respect to the trial court's factual findings on the parties' post-separation debt. Once again, his argument is unpreserved.

Still, the trial court's findings were sufficient to justify the inclusion of only Former Wife's post-separation debt in equitable distribution. See § 61.075(1), Fla. Stat. (providing a list of factors for trial court to consider as justification for unequal distribution, including, but not limited to, economic circumstances of parties; duration of marriage; contribution of each spouse to incurring liabilities; and "any other factors necessary to do equity and justice between the parties"). Here, the trial court's decision to include Former Wife's post-separation debt was based upon the following findings:

> This is a credit card the Former Wife used to pay living expenses during the dissolution. Former Wife was a stay-at-home mother and did not have the funds necessary to support herself and the minor child. Former Husband's support was inadequate and inconsistent. He had a continuing duty to support his Former Wife, his child, and the marital estate. The court has noted the substantial support payments

26

> from the Former Husband to the Former Wife and has noted that support was inadequate for certain periods of time. This obligation is being included in the Former Wife's column for equitable distribution in the amount of $16,660.

Under the circumstances of this case, we cannot conclude that the trial court abused its discretion by including Former Wife's post-separation debt into the equitable distribution worksheet, as she had been a stay-at-home mother for the entirety of the marriage and had little financial stability post-separation. See Knecht v. Palmer, 252 So. 3d 842, 846 (Fla. 5th DCA 2018) (noting that, while best practice is for trial court to address all applicable factors, unequal distribution may be affirmed where court's findings demonstrate that doing so was required to do equity in case).

Accordingly, as to the Former Husband's cross-appeal, on remand, the trial court shall recalculate equitable distribution with attention given to the credits and debts relating to the child's medical bill and Former Husband's credit toward the forensic accounting cost. Otherwise, we affirm on all other issues raised by Former Husband.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

EVANDER, COHEN and WALLIS, JJ., concur.